NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0442n.06

No. 21-5001

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BOB ANDERSON, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Sep 24, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CITY OF FULTON, et al., | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE:  BATCHELDER, KETHLEDGE, and THAPAR, Circuit Judges.

**ALICE M. BATCHELDER**, **Circuit Judge.**  James Buckingham, a City of Fulton police officer, shot and killed Fulton, Kentucky, resident Christopher McClure after McClure charged at Buckingham, wielding a homemade pike,[1] which he swung in Buckingham's vicinity.  The administrator of McClure's estate, Bob Anderson, sued Buckingham on several claims, including under 42 U.S.C. § 1983 for using excessive force in violation of the Fourth Amendment.[2]  Relying almost entirely on police body- and dash-cam footage, the district court granted summary judgment for Buckingham, concluding that his use of force was reasonable.  Anderson now appeals.  We affirm.

---

[1] McClure attached a pocket knife to the end of a three-and-a-half-foot-long steel pole.

[2] Anderson also brought several state-law claims, each of which the district court dismissed on the merits.  In this appeal, Anderson incorrectly refers to those claims as "pendant state law claims dismissed solely in the discretion of the district court upon dismissal of the Federal claims," and seeks their reinstatement but presents no argument with regard to them.  We therefore decline to address them. *See B&H Medical v. ABP Administration, Inc.*, 526 F.3d 257, 267 (6th Cir. 2008).

**I.**

On January 16, 2017, McClure walked up and down a road in Fulton wielding his homemade pike, striking cars as he walked by, and throwing the pike like a spear. Several concerned citizens called 911.

The first officer to arrive on the scene was Fulton Police Chief Terry Powell. Powell verbally engaged McClure from his patrol car. As Powell followed McClure, McClure ran toward the rear of Powell's car and struck the rear window, shattering it. A few minutes later, McClure shattered Powell's driver's side windshield. Powell twice radioed for backup because McClure had struck his vehicle.

Buckingham was the second officer to arrive on the scene. When he was enroute, he heard Powell's calls for backup. When Buckingham arrived on the scene, he witnessed McClure attack a passing civilian vehicle, at which point Buckingham unsuccessfully attempted to de-escalate the situation. Buckingham eventually exited his car with his gun drawn. As Buckingham approached the rear driver's side corner of his patrol car, he came face to face with McClure, who charged to within six feet of Buckingham and swung his pike in Buckingham's vicinity, hitting the rear windshield of his patrol car. Buckingham shot McClure as McClure swung the pike, hitting McClure in the abdomen and causing him to drop the pike.

Following the first shot, Buckingham approached McClure and three times ordered McClure to "get down," but McClure attempted to get back up. Buckingham's bodycam shows that McClure was within reaching distance of the pike, which at that point, did not have the knife attached to the end of it. As McClure attempted to get up, Buckingham fired a second shot at point-blank range into McClure's vital organs. The video shows that seconds elapsed between the first and second shots. During that time, McClure never surrendered or relented. After the second

shot, Buckingham guided McClure to the ground and handcuffed him. McClure ultimately died of his wounds.

## II.

Appellant Anderson argues that the district court improperly granted summary judgment for Buckingham because the video evidence shows that Buckingham used excessive force. We disagree.

"We review a district court's grant of summary judgment de novo." *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). We "assume the truth of the non-moving party's evidence, drawing all inferences in a light most favorable to that party." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015). "If, in doing so, there is sufficient evidence for a trier of fact to find for the non-moving party, a genuine dispute of material fact exists." *Id.* "To make out a genuine issue of material fact, [the] plaintiff must present significant probative evidence tending to support [his] version of the facts." *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009) (emphasis omitted).

To succeed on his § 1983 claim, Anderson must establish that Buckingham violated the Fourth Amendment and is not entitled to qualified immunity. *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008). But Anderson fails to establish the constitutional violation.

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Relevant factors to consider in evaluating the reasonableness of force are the "severity

of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Latits v. Phillips*, 878 F.3d 541, 546 (6th Cir. 2017) (quoting *Graham*, 490 U.S. at 396). "[T]he threat factor is 'a minimum requirement for the use of deadly force,' meaning deadly force 'may be used only if the officer has probable cause to believe that the suspect poses a threat of severe physical harm.'" *Mullins*, 805 F.3d at 766 (quoting *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005)) (emphasis omitted). But "[t]hese factors are not an exhaustive list, and the ultimate inquiry is whether the seizure was reasonable under the 'totality of the circumstances.'" *Slusher*, 540 F.3d at 455 (quoting *Ciminillo*, 434 F.3d at 467).

Because Buckingham used force in two separate events (two separate gunshots), we will assess the reasonableness of each use of force independently. *See Gaddis v. Redford Twp.*, 364 F.3d 763, 772 (6th Cir. 2004). And like the district court, because the events here were recorded by Buckingham's bodycam, we will "view[] the facts in the light depicted by the videotape," *Scott v. Harris*, 550 U.S. 372, 381 (2007), and will "not accept [Anderson's] facts to the extent that they are 'blatantly contradicted by the record,'" *Mitchell v. Schlabach*, 864 F.3d 416, 418 (6th Cir. 2017) (quoting *Scott*, 550 U.S. at 380).

Buckingham's split-second decision to shoot McClure the first time was reasonable because McClure, demonstrating erratic and violent behavior, charged Buckingham with his pike. Nonetheless, the first shot did not abate the threat of serious physical harm. Despite Buckingham's repeated commands to stay down, McClure got to his knees and moved to recover the steel pole that he had used to smash the windows of the several vehicles. Given the unrefuted evidence that (1) McClure was noncompliant and acting erratically, (2) McClure was within reaching distance of the pole, and (3) Buckingham was within two feet when McClure started to stand up,

No. 21-5001, *Anderson v. City of Fulton, et al.*

Buckingham had probable cause to perceive McClure as an imminent threat and did not use unreasonable force when he shot McClure the second time. *See Mullins*, 805 F.3d at 766.

Considering the totality of the circumstances, Buckingham did not violate the Fourth Amendment.

## III.

Because the video footage provides irrefutable evidence that Buckingham used reasonable force, we **AFFIRM** the judgment of the district court.